UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

**Rolling Green at Whip-Poor-Will
Condominium Townhouse Unit Owners
Association, et al**

   **v.**                                    Civil No. 15-cv-391-PB
                                             Opinion No. 2016 DNH 044
**Bank of America, et al**


**MEMORANDUM AND ORDER**

This case involves an attempt by a condominium association to recover for damages it suffered after frozen pipes burst in a vacant condominium unit.  The condominium association has sued Bank of America ("BOA"), the mortgagee for the vacant unit, and Safeguard Properties, a company BOA hired to oversee the property.  BOA has responded with a motion to dismiss for failure to state a claim.  For the reasons that follow, I deny BOA's motion.


I.   **BACKGROUND**[1]

In 2010, Maria Caporicci purchased a unit ("the Unit") in

---

[1] The facts here are drawn primarily from Rolling Green's complaint (Doc. No. 1-1) and are construed in the light most favorable to Rolling Green.  See Rivera v. Centro Medico de Turabo, Inc., 575 F.3d 10, 15 (1st Cir. 2009).

the Rolling Green at Whip-Poor-Will Condominium in Hudson, NH.[2] Doc. No. 1-1 at 5. Caporicci granted a mortgage secured by the Unit to the Mortgage Electronic Registration System, Inc., which later assigned it to BOA. Id. at 6.

In February 2013, Caporicci died, leaving the Unit vacant. Id. The mortgage loan soon went into default and in September 2013, Rolling Green formally terminated the Unit's "common area privileges," which included access to running water. Id. Several months later, by May 2014, BOA retained Safeguard Properties ("Safeguard") to "monitor" and "exercise . . . authority and control over" the vacant Unit "on [the bank's] behalf," although BOA had not yet initiated foreclosure proceedings. Id. at 7, 11. Safeguard posted a notice on the Unit stating that it was monitoring the Unit at the request of the "mortgagee." Id. at 7.

Later in 2014, Rolling Green became concerned that the Unit would be left unheated over the winter, creating a risk that the pipes would burst and cause damage to nearby units. Id. at 4. On November 24, 2014, it sent a letter to BOA's attorney expressing its concerns and asking BOA to turn on the heat and

---

[2] The condominium has two governing associations, one for townhouses, and one for condominium units. Both entities are plaintiffs here. Doc. No. 1-1 at 4-5. For the sake of brevity, I refer to both associations as "Rolling Green" in this Memorandum and Order.

winterize the Unit immediately.  Id.  The letter also stated that BOA would be held responsible for any damage caused by its negligence, and reminded BOA that its common area privileges had been terminated.  Id.

On the same day, November 24, 2014, Rolling Green also wrote to Caporicci's estate, requesting permission to take "custody and control" of the Unit until BOA foreclosed.  Id. The administrator of Caporicci's estate agreed, and a copy of the estate's authorization of custody and control was sent to BOA and Safeguard.  Id. at 8.  About a week later, on December 3, 2014, Rolling Green members entered the Unit and found that the heat was turned off but the water remained on.  Id.  Rolling Green drained the water lines and attempted to turn the heat on, but discovered an issue that prevented them from doing so.  Id. It then notified BOA's attorney that a plumber needed to be called to turn on the heat.  Id.  Later that month, on December 12, 2014, Safeguard employees entered the Unit, changed the locks, and turned the water on – but failed to fix or turn on the heat.  Id.  Safeguard did not notify Rolling Green of its actions.  Id.

A month later, on January 9, 2015, the pipes burst in the Unit.  Id. at 9.  Rolling Green's property management company received a call from the owner of a neighboring unit complaining

3

that water was flooding into his condo. Id. The company went to the Unit, but had to cut the locks to gain entry. Id. Upon arrival, they discovered that the water had been turned on and the water lines had frozen and ruptured, causing the flooding. Id. The boiler in the building had also cracked and exploded, and the floor in the Unit was sagging. Id. Making matters worse, the pipes serving the building's shared sprinkler system failed soon after, and the system was rendered inoperable. Id. The Hudson Fire Department later examined the damage and concluded that the building might collapse. Id. As a result, the other unit owners in the building had to be temporarily relocated. Id.

Rolling Green bore the cost of the repairs to the sprinkler system and the common areas, receiving an estimate of $83,800 for the sprinkler alone. Id. Rolling Green informed Safeguard of the damage, and although Safeguard initially indicated that it would send a crew to estimate the damages, it never got back to Rolling Green. Id. at 10. BOA, meanwhile, refused to accept a deed in lieu of foreclosure from Caporicci's estate. Id. Instead, it scheduled a foreclosure sale for September 1, 2015, but left the repair costs to Rolling Green. Id. at 10-11.

On September 23, 2015, Rolling Green brought suit for negligence, trespass, and conversion against BOA and Safeguard

4

in a New Hampshire state court. BOA removed the case to this court, and responded with the present motion to dismiss for failure to state a claim under Rule 12(b)(6). Safeguard filed an answer and has not joined in BOA's motion to dismiss.

## II. STANDARD OF REVIEW

To survive a Rule 12(b)(6) motion, a plaintiff must allege sufficient facts to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). A claim is facially plausible if it provides "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. This plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully," id., but "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" of wrongdoing. Twombly, 550 U.S. at 556.

I employ a two-step approach in deciding a Rule 12(b)(6) motion. See Ocasio-Hernandez v. Fortuno-Burset, 640 F.3d 1, 12 (1st Cir. 2011). First, I screen the complaint for statements that "merely offer legal conclusions couched as fact or threadbare recitals of the elements of a cause of action." Id. (citations, internal punctuation, and alterations omitted). I

then accept as true all non-conclusory factual allegations and the reasonable inferences drawn from them, and determine whether the claim is plausible.  Id.

### III.  ANALYSIS

BOA does not challenge the sufficiency of Rolling Green's claims that Safeguard trespassed on common areas in the condominium, converted water that belonged to the condominium association, and negligently caused the pipes in the Unit to burst.  Instead, it argues that dismissal is required because Rolling Green has failed to allege sufficient facts to support its claim that BOA can be held liable for Safeguard's tortious acts.  I am unpersuaded by BOA's argument.

Rolling Green alleges that BOA had a right under the mortgage to "take reasonable measures to preserve and protect" the Unit "in the event that it became vacant or abandoned."  Doc. No. 1-1 at 3.  It claims that BOA actually exercised control over the Unit and retained Safeguard to act as its agent in exercising that control.  Id. at 7, 11.  Further, it asserts that Safeguard was acting as BOA's agent when it accessed common areas in the condominium without permission, converted water belonging to Rolling Green without permission, and caused the pipes to burst in the Unit by turning on the water to the Unit

during the winter even though it was unheated.  Id. at 8, 11-12.  Finally, it alleges that BOA knew or should have known that: (1) neither Safeguard nor BOA was authorized to access common areas in the condominium; (2) neither defendant was authorized to use the condominium's water; and (3) turning the water to the Unit on while it was unheated and changing the locks on the Unit presented an unreasonable risk that the pipes in the Unit would freeze and burst.  Id. at 4, 5 and 8.

When these facts are viewed in the light most favorable to Rolling Green, they are sufficient to state a plausible claim that BOA can be held liable for Safeguard's tortious acts under basic principles of tort and agency law.  See, e.g., Restatement (Third) of Agency § 7.04; Restatement (Second) of Torts § 877(d).  Accordingly, I deny BOA's motion to dismiss without prejudice to its right to renew its argument in a motion for summary judgment after discovery has been completed.[3]

### IV.   CONCLUSION

For the reasons stated, BOA's motion to dismiss (Doc. No.

---

[3] Because I deny the motion to dismiss on basic tort and agency principles, I need not determine whether BOA can be held liable on any of Rolling Green's claims as a mortgagee in possession of the Unit.  See Case v. St. Mary's Bank, 164 N.H. 649, 655-56 (2013) (describing mortgagee in possession doctrine).

7

10) is denied.

    SO ORDERED.

                                        <u>/s/Paul Barbadoro</u>
                                        Paul Barbadoro
                                        United States District Judge

March 4, 2016

cc:   Daniel D. Muller, Jr.
      Thomas J. Pappas
      Christopher P. Flanagan
      Marissa Tripolsky